IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **DANNY LEE LILLY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:10-00750 |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 14 and 16.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.)

The Plaintiff, Danny Lee Lilly, (hereinafter referred to as "Claimant"), filed an application for DIB on May 8, 2007 (protective filing date), alleging disability as of September 1, 2006, due to depression, anxiety, an eating disorder, back pain, and knee pain. (Tr. at 6, 110, 111-13, 114-20, 147, 151.) The claim was denied initially and on reconsideration. (Tr. at 57-59, 70-72, 73-75) On February 1, 2008, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 76.) The hearing was held on June 19, 2008, before the Honorable James P. Toschi. (Tr. at 20-52.) By decision dated July 15, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 6-16.) The ALJ's decision became the final decision of the Commissioner on April 16, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-3.) On May 19, 2010,

Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas

>(activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since September 1, 2006, his alleged onset date. (Tr. at 8, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from chronic lumbar strain, obesity, depression, and anxiety disorder, which were severe impairments. (Tr. at 9, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 9, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for medium exertional work as follows:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). He should avoid ladders, ropes, or scaffolds. He should avoid activities requiring kneeling and crawling. He is limited to occasional (defined as two hours or one-third of an eight-hour day) climbing of ramps and stairs, balancing, stooping, and crouching. He should avoid concentrated exposure to extreme cold, extreme heat, and vibration. He should avoid all exposure to hazards including heights and machinery. He is limited to understanding, remembering, and carrying out simple instructions and tasks only. He could have no contact with the public. He would be limited to jobs with low stress and low production requirements.

5

(Tr. at 11, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 14, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a laundry worker, warehouse laborer, and presser, at the medium level of exertion. (Tr. at 15-16, Finding No. 10.) On this basis, benefits were denied. (Tr. at 16, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 9, 1979, and was 29 years old at the time of the administrative hearing, June 19, 2008. (Tr. at 15, 23, 111, 114.) Claimant had a high school education and two

years of college, and was able to communicate in English. (Tr. at 15, 24, 150, 156.) In the past, he worked as record clerk and an Intel Analyst in the military . (Tr. at 14, 24-25, 46, 152, 158-65.)

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to give controlling weight to the opinion of Claimant's treating physician, Ms. Farmer, regarding the limitations imposed by anxiety and depression. (Document No. 14 at 19-23.) He asserts that the ALJ failed to discuss in his decision the length of Ms. Farmer's treatment relationship and the extent of the treatment or specialization. (Id. at 21.) He further asserts that the ALJ failed to explain why he found Ms. Farmer's opinion as stated in the medical assessment form not consistent with her progress notes. (Id.) Claimant notes that Ms. Farmer treated Claimant on numerous occasions. (Id. at 22.) As a consequence of the ALJ's failure to give controlling weight to Ms. Farmer's opinions, Claimant asserts that the ALJ's RFC assessment also is erroneous. (Id.) He notes that Ms. Farmer's opinion regarding his poor ability to deal with the public and relate to co-workers was supported by Dr. Smith's and Medical Expert Dr. Tessnear's opinions. (Id.) He also notes that Ms. Farmer's opinion that Claimant had poor ability to deal with work stressors also is supported Dr. Tessnear's opinion. (Id.) Consequently, Claimant contends that contrary to the ALJ's finding, Ms. Farmer's opinions were neither extreme nor unsupported by the medical record. (Id. at 23.)

In response, the Commissioner asserts that the ALJ properly weighed Ms. Farmer's assessment and adequately articulated his analysis. (Document No. 16 at 13-19.) The Commissioner first points out that Ms. Farmer was a social worker, and therefore, pursuant to 20 C.F.R. §§ 404.1513(a) and 416.913(a), she was not an acceptable medical source. (Id. at 13, n. 6.)

Consequently, Ms. Farmer's opinion was not entitled to controlling weight or the same weight as an acceptable medical source. (Id.) The Commissioner next asserts that the ALJ found that Ms. Farmer's "unduly restrictive assessment" was not supported by her own treatment notes. (Id. at 14.) He also asserts that Ms. Farmer's opinions were inconsistent with the record as a whole. (Id. at 14-15.) Despite Claimant's allegations to the contrary, the Commissioner contends that the ALJ considered, discussed, and properly evaluated every opinion and devoted an entire paragraph to Ms. Farmer's opinion. (Id. at 16.)

The Commissioner further asserts that the ALJ "accounted for all credibly established limitations in [Claimant's] RFC including her ability to deal with the public, work stresses and his ability to maintain attention and concentration by limiting [Claimant] to simple instructions and tasks, in a low stress, low production environment, with no public contact." (Id.) He asserts that the ALJ's RFC assessment was supported by the objective medical evidence. (Id. at 17.) First, the Commissioner notes that Claimant's GAF scores averaged 55, which was indicative of only moderate symptoms. (Id. at 17-18.) Second, he notes that mental status exams revealed that Claimant was alert, oriented, coherent, and maintained good eye contact. (Id. at 18.) Furthermore, the ALJ considered Claimant's side effects from medications and his treatment level. (Id.) Finally, the Commissioner notes that the ALJ's assessment was consistent with the medical expert's opinions. (Id. at 18-19.) The Commissioner therefore asserts that Claimant's arguments are without merit. (Id. at 19.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Analysis.

1. Opinion Evidence.

Claimant first alleges that the ALJ erred in not giving controlling weight to the opinions of Ms. Farmer. (Document No. 14 at 19-23.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2008). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

9

See 20 C.F.R. § 416.927(e)(2) (2008).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2008). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an

10

individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2008). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more

11

consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2008). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling

weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

### *Ms. Becker*:

Claimant was examined by Elizabeth H. Becker, a licensed independent clinical social worker at the Beckley VAMC on February 13, 2007, for counseling. (Tr. at 308-12.) Claimant reported problems with anxiety, binge eating, and anger management. (Tr. at 308.) Nevertheless, he had no history of self harm or homicidal ideation. (Id.) Mental status exam revealed an anxious mood and a dysphoric mood. (Tr. at 310.) His insight and judgment were good, he had an above average fund of knowledge, he was determined to be not be a significant risk of danger to himself or to others. (Tr. at 310-11.) Ms. Becker diagnosed anxiety disorder NOS, depressive disorder, personality disorder/traits, addictive disorder: bing eating, and assessed a GAF of 60. (Tr. at 311.) She recommended that Claimant attend an anger management group, but Claimant refused. (Id.)

On May 4, 2007, Ms. Becker noted that Claimant presented with an anxious mood and dysphoric mood, but otherwise noted no deficiencies on mental status exam. (Tr. at 292-97.) She assessed a GAF of 60. (Tr. at 296.)

### *Dr. Farmer*:

On October 18, 2007, Claimant also was seen by Mary Farmer, Ph.D., MSW, a social worker and psychologist, at the Beckley VAMC on October 18, 2007, for counseling. (Tr. at 291-92.) Dr. Farmer noted Claimant's complaints of increased depression, binge eating, and road rage. (Tr. at 291.) She assessed dysthymia and a GAF of 55. (Id.) On November 13, 2007, reported that he

remained depressed and Dr. Farmer assessed a GAF of 50.[2] (Tr. at 274.)

Dr. Farmer completed a form Medical Assessment of Ability to do Work-Related Activities (Mental), on November 5, 2007, after only two counseling sessions with Claimant. (Tr. at 392-94.) Dr. Farmer assessed that Claimant had poor ability to perform the following work-related functions: relate to co-workers, deal with the public, deal with work stresses, maintain attention and concentration, maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out complex and detailed job instructions. (Tr. at 392-93.) She indicated that he had fair ability to use judgment, function independently, and understand, remember, and carry out simple job instructions. (Id.) Finally, she noted that he had good ability to follow work rules and interact with supervisors. (Tr. at 392.) Dr. Farmer opined that Claimant's dysthymia limited his ability to concentrate and focus on tasks and impaired his ability to communicate effectively and his memory, that job stress created anxiety attacks, and that he could not function at his intellectual capacity due to his emotional issues. (Tr. at 393.)

### *Dr. Obleada*:

On October 18, 2007, Claimant was examined by Dr. Lydia P. Obleada, a psychiatrist at the Beckley VAMC, for 15 to 20 minutes for depression and binge eating. (Tr. at 285-91.) On mental status exam, Claimant was alert, attentive, and oriented, but was not motivated to lose weight. (Tr. at 289.) Dr. Obleada noted that Claimant was in touch with reality and knew that he ate too much

---

[2] A GAF of 41-50 indicates that the person has some serious symptoms "(e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

which made him gain eight and that he had no control of his diet. (Tr. at 290.) He was responsive and made good eye contact and exhibited normal rate and rhythm of speech with coherent, relevant, and goal directed language. (Tr. at 289.) His mood was depressed and his affect was congruent with his mood. (Id.) Dr. Obleada noted that Claimant had mood swings and anger outbursts with a history of crying episodes. (Id.) Nevertheless, he reported no unusual thought content or suicidal or violent ideation. (Id.) His insight was limited, his judgment was impaired, and he easily forgot people's names. (Id.) Dr. Obleada diagnosed bipolar disorder, depressive disorder, personality disorder/traits NOS, and assigned a GAF of 55.[3] (Tr. at 290.)

*Ms. Dees*:

Claimant was examined by Debra Dees, a certified physician assistant at the Beckley VAMC on November 15, 2007. (Tr. at 270-72.) Claimant reported that he drove at night during the past week and felt like he had a panic attack. (Tr. at 270.) He explained that he was sweaty, his heart was racing, and he felt like he needed to get away. (Id.) He indicated that he had gained 60 pounds over the last year. (Id.) Claimant reported that he babysat his sister's children while she attended school. (Tr. at 271.) He stated that he ate to cope with stress and eating made him feel good. (Id.) He reported low energy and motivation, but indicated a desire to return to college when he felt back in control of his life. (Id.) On mental status exam, Ms. Dees noted that Claimant's mood was euthymic with a congruent affect, he made good eye contact, his judgment and insight were good, his speech was clear, concise, and goal directed, and his thoughts were appropriate. (Id.) She assessed Claimant

---

[3] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

as stable and that he had no barriers to learning. (Tr. at 271-72.)

### *Dr. Saar*:

On September 14, 2007, Dr. Timothy Saar, Ph.D., completed a form Psychiatric Review Technique. (Tr. at 215-29.) Dr. Saar opined that Claimant's depressive and anxiety disorders neither were severe impairments, nor met or equaled any Listing impairment. (Tr. at 215, 218, 220, 226-27.) He further opined that Claimant's mental impairments resulted in mild restrictions of activities of daily living and mild difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. at 225.) He further found that Claimant had no episodes of decompensation each of extended duration. (Id.)

### *Dr. Smith*:

On January 16, 2008, Dr. Rosemary L. Smith, Psy.D., a state agency reviewing medical source, completed a form Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity Assessment. (Tr. at 395-408, 409-13.) On the PRT, Dr. Smith opined that Claimant's bipolar, dysthymic, and personality disorders resulted in mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation each of extended duration. (Tr. at 395-408.) She noted that Dr. Farmer was a social worker and not an approved medical source and that the evidence did not support her limitations. (Tr. at 407.) Dr. Smith also opined that Claimant's impairments did not meet or equal any of the listing impairments.(Tr. at 406.) On the Mental RFC Assessment, Dr. Smith opined that Claimant was moderately limited in his ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors. (Tr. at 410.) Finally, she opined that Claimant retained "the ability to

learn and perform a variety of work-like activities in an environment that involves limited contact with others." (Tr. at 411.)

In his decision, the ALJ gave no significant weight to Dr. Farmer's opinion because he found her limitations extreme and not totally supported by the evidence of record. (Tr. at 14.) Similarly, he gave no significant weight to Dr. Saar's opinion because contrary to his opinion, the evidence of record demonstrated mental limitations from depression and anxiety. (Id.) The ALJ gave significant weight to the opinion of Dr. Smith and accounted for her limitations in his RFC assessment. (Id.)

Though not asserted by the ALJ as a reason for discounting her opinion, the Commissioner correctly points out that pursuant to 20 C.F.R. §§ 404.1513(a) and 416.913(a), Dr. Farmer is not an acceptable medical source, and therefore, her opinions are not entitled controlling weight as would a treating medical source. Nevertheless, the ALJ explained that he did not give significant weight to her opinion because her limitations were extreme and inconsistent with the evidence of record. The ALJ summarized all the evidence of record, including the testimony of Dr. Tessnear, who opined that Dr. Farmer's treatment notes were inconsistent with her opinions. The ALJ acknowledged Claimant's activities of daily living, which included babysitting children, and therefore found that his activities were greater than the limitations assessed by Dr. Farmer. Additionally, as the ALJ noted, Claimant's GAF scores primarily were around 55, which was indicative of only moderate symptoms. Furthermore, Dr. Farmer's limitations were not reflected in her treatment notes. For the most part, the various mental status exams essentially were normal. Accordingly, the undersigned finds that the ALJ's decision to not give controlling weight to Dr. Farmer's opinions is supported by substantial evidence.

Furthermore, the Court finds that the ALJ's RFC assessment is supported by substantial

evidence. As discussed above, the average score of 55 was indicative of only moderate symptoms. Furthermore, Dr. Tessnear and Dr. Smith both found limitations regarding Claimant's contact with the public. The ALJ incorporated the limitations assessed by Drs. Tessnear and Smith in his RFC assessment. The fact that Claimant received a veteran's disability pension does not require a similar disability finding in the instant matter because different standards are involved. See 20 C.F.R. 404.1504 and 416.904 (2008). The ALJ incorporated those limitations supported by the record, and therefore, the Court finds that the ALJ's RFC assessment is supported by substantial evidence.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 14.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 16.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court..

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2011.

R. Clarke VanDervort
United States Magistrate Judge